# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

CYNTHIA HARRIS,

        Plaintiff,

v.

LAKEVIEW LOAN
SERVICING, LLC and
FLAGSTAR BANK,

        Defendants.

Case No. 17-12112
Hon. Terrence G. Berg

## ORDER GRANTING DEFENDANTS' RENEWED MOTION TO DISMISS

### I.  Introduction

Plaintiff Cynthia Harris claims that when she fell behind on her mortgage, Defendant Flagstar Bank offered her a Trial Payment Program ("TPP") to allow her to demonstrate her ability to meet the terms of a loan modification. But after Plaintiff made some payments, Defendant failed to follow through with a permanent loan modification. Eventually, Plaintiff alleges, Defendant's failure to enter into a loan modification lead to an unlawful foreclosure and breach of contract, and so she brings this lawsuit for damages. Defendant seeks to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6) because it fails to state a claim upon which relief can be granted. For the reasons discussed below, the

1

Court finds that Plaintiff has not stated a claim and therefore **GRANTS** Defendant's Motion to Dismiss.

## II. Background

On November 4, 2011, Plaintiff purchased real property at 111 Illinois Avenue, Pontiac, Michigan ("Property"). ECF No. 18 PageID.415. At the same time, Plaintiff executed a mortgage loan for $68,225.00. *Id*. The mortgage was executed from Mortgage Electronic Registration Systems, Inc. ("MERS") solely as nominee for Gold Star Mortgage Financial Group ("Gold Star"). *Id*. The mortgage was subsequently assigned to Matrix Financial Services Corporation ("Matrix") on September 26, 2014. *Id*. Matrix then assigned the mortgage to Lakeview Loan Servicing (one of the Defendants in this case) on February 9, 2017. *Id*. at PageID.416. Flagstar was the servicer of the mortgage at all relevant times. *Id*.

Plaintiff fell two payments behind on the mortgage, and, on October 13, 2015, Defendant Flagstar suggested that she apply for a loan modification. ECF No. 1-2 PageID.84. Plaintiff completed the application and returned it to Defendant Flagstar on February 25, 2016. *Id*. Plaintiff alleges that she was then accepted into the Trial Payment Program and made four payments under the Trial Payment Program agreement. *Id*. After these four payments, Defendant Flagstar failed to execute the Loan Modification Agreement. *Id*.

2

Plaintiff apparently made no additional mortgage payments during 2016, but she resumed loan modification discussions in August 2016. *Id.* During the loan modification negotiations in August 2016, Plaintiff alleges that she attempted to reinstate the loan—to bring her payments up to current—but that Defendant Flagstar refused the reinstatement. *Id.* Instead, Defendant Flagstar proceeded with foreclosure. *Id.*

After Defendant gave notice that it intended to foreclose and the Sheriff's sale was scheduled, on May 5, 2017, Plaintiff filed a quiet title action in Oakland County Court, and on May 8, 2017 a Motion for a Temporary Restraining Order to stop the Sheriff's sale. *Id.* at PageID.85. The motion for a TRO was denied, and Defendant Flagstar held the Sheriff's sale on May 9, 2017. *Id.* Plaintiff filed her Amended Complaint on May 26, 2017, alleging nine counts: (I) Quiet Title; (II) Breach of TPP Agreement; (III) Specific Performance; (IV) Promissory Estoppel; (V) Equitable Estoppel; (VI) Wrongful Foreclosure by Advertisement; (VII) Breach of Duty of Good Faith and Fair Dealing; (VIII) Violation of the Fair Credit Reporting Act; and (IX) Injunction and Other Relief.

Defendants removed the case to federal court on June 28, 2017. ECF No. 1. On July 20, 2017, Defendants filed a Motion to Dismiss. ECF No. 4. In her Response to the motion, Plaintiff requested facilitation rather than an order on the motion. ECF No. 8

3

PageID.251–52. In the meantime, on or about October 13, 2017, Plaintiff was able to redeem the property. ECF No. 26 PageID.608. The Court granted the request for facilitation on January 23, 2018. Facilitation did not resolve the case, but as a result of the redemption, Plaintiff dismissed three counts of the complaint (Quiet Title, Specific Performance, and Injunctive Relief). ECF No. 13.

On May 21, 2018, Defendant renewed its Motion to Dismiss. ECF No. 18. Plaintiff responded on June 12, 2018, ECF No. 20, and Defendant replied on June 20, 2018, ECF No. 21.

During a status conference with the Court on October 1, 2018, parties indicated that the property had been redeemed, and that this changed the nature of the relief sought from the Amended Complaint. The Court determined that the facts in the record related to the redemption were inadequate to permit the Court to render a decision on Defendant's Motion to Dismiss and requested supplemental briefing on the impact of the redemption on Plaintiff's claims. ECF No. 25. Plaintiff provided that briefing on October 22, 2018, ECF No. 26, and Defendant responded on October 29, 2018, ECF No. 27.

### III. Standard of Review

A party may move to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can

be granted." Rule 12(b)(6) is read in conjunction with the pleading standard set forth in Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2); *see Ashcroft v. Iqbal*, 556 U.S. 662, 677–68 (2009). This standard does not require detailed factual allegations. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, a party's "obligation to provide the 'grounds' of his 'entitle[ment]' to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). To survive a Rule 12(b)(6) motion, the complaint and any other matters properly considered must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility when the pleaded factual content allows the court, drawing upon its "judicial experience and common sense," to reasonably infer that the defendant is liable for the misconduct alleged. *Id.* at 678 (citing *Twombly*, 550 U.S. at 556), 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Rule 8(a)(2)).

## IV. Analysis

Plaintiff's remaining claims are for Breach of TPP Agreement (Count II), Promissory Estoppel (Count IV), Equitable Estoppel (Count V), Wrongful Foreclosure by Advertisement (Count VI), Breach of Duty of Good Faith and Fair Dealing (Count VII), and Violation of the Fair Credit Reporting Act (Count VIII). For each of the claims, Defendant alleges that Plaintiff has not stated a claim upon which relief can be granted. The Court discusses each in turn below.

### a. Count II – Breach of TPP Agreement

Plaintiff's first claim is that Defendants breached the TPP agreement by failing to offer her a permanent loan modification after she made three payments in accordance with the agreement. To allege breach of contract under Michigan law, "a plaintiff must allege (1) the existence of a contract, (2) the terms of the contract, (3) breach of the contract by the defendant, and (4) that the breach caused the plaintiff's injury." *Haviland v. Metropolitan Life Ins. Co.*, 876 F. Supp. 2d 946, 957 (E.D. Mich. 2012) (citing *Webster v. Edward D. Jones & Co.*, 197 F.3d 815, 819 (6th Cir. 1999)).

Construing the pleadings in the light most favorable to Plaintiff, Plaintiff has alleged that the TPP agreement was a contract. ECF No. 1-2 PageID.10. Plaintiff alleges that Defendant failed to offer

6

her a permanent loan modification, and that this failure caused her to suffer damages. ECF No. 1-2 PageID.11. But Plaintiff does *not* allege that the TPP agreement contained a term requiring Defendant to offer a permanent loan modification. An essential element of a breach of contract cause of action is missing: the term of the contract Plaintiff claims Defendant breached. Without this bridge between the contract and the damages, Plaintiff has not adequately stated a claim upon which relief can be granted.

Plaintiff cites two cases for the proposition that unsigned TPP agreements bind lenders to offer permanent loan modifications. In *Darcy v. Citifinancial, Inc.*, No. 1:2010cv00848 (W.D. Mich. Aug. 25, 2010),[1] the TPP agreement at issue was produced pursuant to a federal program, the Home Affordability Modification Program (HAMP). Under the written TPP, which was analyzed by the court, the lender was obligated either to return a copy of the agreement to the borrower with the lender's signature or to send written notice that the borrower did not qualify for the offer. The lender did neither. Both sides argued as to the operation of the written terms of the agreement, but the court found that its terms were ambiguous enough that dismissal was precluded. Here, there is no written TPP for the court to interpret.

---

[1] This case has not been published on Westlaw or LEXIS as a slip opinion. A copy of this case is attached as Exhibit 1.

Similarly, in the other case Plaintiff cites, *Belyea v. Litton Loan Servicing, LLP*, No. 10-10931, 2011 WL 2885964 (D. Mass. Jul. 15, 2011), the TPP at issue was written and signed by at least the borrower. *Id.* at *3. It also contained a provision obligating the lender to extend a permanent loan modification if the borrower met the conditions of the TPP. *Id.* In this case, the Court does not know what, if anything, the TPP "Agreement" promised because there is no written TPP Agreement, and moreover, Plaintiff has not specifically alleged the terms of any oral contract. As stated, the elements of a contract claim include pleading the existence of a contract, the terms of the contract, breach of the terms of the contract, and that the breach caused damages. Here, Plaintiff states that there was a TPP and Defendant offered Plaintiff a "permanent loan modification" if Plaintiff complied with the terms of the TPP. However, the complaint does not allege what the terms of the TPP were. Without knowing the terms, there is no plausible allegation as to how Defendant violated the TPP by not offering a loan modification. Therefore, Plaintiff has failed to state a claim with respect to Count II of her Complaint.[2]

---

[2] Defendant argues for dismissal because Michigan's statute of fraud prohibits actions against a financial institution to enforce an unwritten or unsigned agreement to "[r]enew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation." M.C.L. 566.132. The Court does not consider Defendant's argument that the statute of frauds plainly appears to prohibit a suit to enforce the TPP Agreement in this situation because the statute of frauds is an affirmative

**b. Count IV – Promissory Estoppel**

Count IV of Plaintiff's Complaint raises a claim of promissory estoppel. This Count alleges that "Flagstar Bank made innocent and/or negligent and/or intentional representations of material facts by promising or representing that the Plaintiff would obtain a TPP and permanent Loan Modification." ECF No. 1-2 PageID.14.

Defendant argues that a Plaintiff must allege three elements to make a claim of promissory estoppel: "(1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, and (3) that in fact produced reliance or forbearance of that nature in circumstances such that the promise must be enforced if injustice is to be avoided." *Novak v. Nationwide Mut. Ins. Co.*, 599 N.W.2d 546, 552 (Mich. Ct. App. 1999). The Michigan Supreme Court has consistently chosen a different phrasing of the elements of a promissory estoppel claim: "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *State Bank of Standish v. Curry*, 500 N.W.2d 104, 107 (Mich. 1993) (quoting 1 Restatement Contracts 2d

---

defense to a breach of contract suit, not grounds for a granting a motion to dismiss. *See Jim-Bob, Inc. v. Mehling*, 443 N.W.2d 451, 456 (Mich. Ct. App. 1989).

9

§ 90 at 242); *see also North Am. Brokers, LLC v. Howell Public Schools*, 913 N.W.2d 638, 639 (Mich. 2018) (using the same definition).

It its Motion to Dismiss, Defendants first raise the statute of frauds argument that the Court addressed above, in footnote 2. Second, Defendants argue that any agreement reduced to a written contract is not grounds for a promissory estoppel claim.[3] Plaintiff does not respond to this argument, beyond stating, "See argument above." ECF No. 20 PageID.496. It unclear which argument "above" Plaintiff intends to reference, because Plaintiff made no previous argument addressing Defendants' point that breach of a written contract cannot support a claim for promissory estoppel. But regardless, it is clear that Plaintiff has failed to adequately plead a claim of promissory estoppel.

Plaintiff claims that Defendant promised both a TPP and a permanent loan modification. ECF No. 1-2 PageID.89. But Plaintiff does not specifically allege that Defendant *knew or should have known* that its promise would induce Plaintiff's reliance. Instead, Plaintiff states that Defendant could reasonably foresee the *damages* that breaching the TPP Agreement would cause. ECF No.

---

[3] Contrary to Defendants' statement in the Motion to Dismiss, the Plaintiff does not appear to allege that the TPP was in writing. Instead, she states only that she was "accepted into the Trial Payment Program." ECF No. 1-2 PageID.10.

10

1-2 PageID.89. Indeed, not only does Plaintiff fail to allege Defendant's knowledge of her reliance on the promise of a loan modification, the Court cannot infer Plaintiff's reliance based on the pleadings. Plaintiff's interest in entering the TPP was to avoid foreclosure—the alternative to the TPP. Under these circumstances, the Court could infer that the bank knew that it was *not* the promise of a permanent loan modification that induced Plaintiff's agreement to enter the TPP. Rather, Plaintiff chose to enter the TPP as the only alternative to immediate foreclosure.

Moreover, Plaintiff does not specifically allege that Defendant's promise ought to be enforced to avoid injustice.[4] ECF No. 1-2 PageID.89. Instead, Plaintiff states that she would not have entered into the TPP Agreement if she had known Defendant would still proceed with foreclosure and that she suffered damages because of Defendants' actions. ECF No. 1-2 PageID.89. As the Court noted above, this is a dubious claim. Plaintiff likely *would* have entered into the TPP Agreement even if she knew Defendants would proceed with foreclosure eventually—that outcome is still preferable to the immediate foreclosure that was ostensibly the alternative to the TPP Agreement.

---

[4] Perhaps the reason Plaintiff does not ask for enforcement of the promise that a loan modification be granted is the simple fact that Plaintiff no longer owes any mortgage debt to Defendant—there is no loan to be modified because Plaintiff redeemed the property.

11

Plaintiff asks the Court to read between the lines and extract the required elements as implications of her pled facts. This strategy does not satisfy the requirement that Plaintiff set forth a short and plain statement showing that she is entitled to relief. It does not even rise to a "threadbare recital[] of a cause of action's elements," that courts have found to be inadequate. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The pleaded facts allow the Court to infer only the "mere possibility of misconduct," as *Iqbal*, 556 U.S. at 679, puts it— therefore, Defendants' Motion to Dismiss Count IV is granted.

### c. Count V – Equitable Estoppel

Plaintiff's Complaint claiming equitable estoppel repeats her promissory estoppel claim word-for-word. ECF No. 1-2 PageID.91. Defendants argue that no relief can be granted on the equitable estoppel claim because equitable estoppel is a defense that a plaintiff can raise in response to a defendant's affirmative defense. ECF No. 18 PageID.427. Plaintiff offers no specific response, simply directing the Court to "[s]ee argument above." ECF No. 20 PageID.496.

Although Michigan law is not entirely clear on the question of whether equitable estoppel ought to be pled in a complaint, a review of the case law suggests that Defendants' position is correct. "[E]quitable estoppel . . . is available as protection from a defense
12

raised by the defendant. It is not available to the plaintiff in stating a cause of action." *Hoye v. Westfield Ins. Co,* 487 N.W.2d 838, 842 (Mich. Ct. App. 1992) (quoting *Harrison Twp. v. Calisi*, 329 N.W.2d 488 (internal citation omitted)). At the same time, the *Hoye* court noted that "our Courts have apparently allowed plaintiffs to avail themselves of the doctrine." *Id.* (citing 1 Michigan Pleading & Practice, § 8.33 at 426) (ultimately concluding that, despite the apparent allowance of equitable estoppel in complaints, the correct view is that equitable estoppel is solely a plaintiff's defense).

A survey of the equitable estoppel case law reveals that *Hoye* was correct to hold that equitable estoppel is a plaintiff's defense. Michigan Court of Appeals and Michigan Supreme Court cases have considered equitable estoppel as a defense to defendants' affirmative defense that a claim is outside the statute of limitations. *See, e.g., Doe v. Racette*, 800 N.W.2d 332, 334 (Mich. Ct. App. 2015) ("Equitable estoppel is a judicially created exception to the general rule which provides that statutes of limitation run without interruption." (citation and quotation marks omitted)); *see also Lothian v. City of Detroit*, 324 N.W.2d 9, 17–18 (1982) ("Equitable estoppel may be introduced to counter a statute of limitations defense so as 'to accomplish the prevention of results contrary to good conscience and fair dealing.'" (quoting *McLearn v. Hill*, 177 N.E. 617 (1931))). Case law after 1992 approvingly cites *Hoye*'s

13

pronouncement that equitable estoppel is not a cause of action. *E.g. Lathrup Investment Co. v. West Am. Ins. Co.*, No. 212269, 2000 WL 33391105, at *1 (Mich. Ct. App. Dec. 15, 2000).

Because equitable estoppel is a defense to a defendant's affirmative defense, not a cause of action, it cannot be advanced as a claim upon which relief can be granted. Defendant's Motion to Dismiss Count V is therefore granted.

### d. Count VI – Wrongful Foreclosure by Advertisement

Count VI of Plaintiff's Complaint alleges that Defendant violated M.C.L. 600.3204. The statute reads:

> (1) A party may foreclose a mortgage by advertisement if all of the following circumstances exist:
>
> (a) A default in a condition of the mortgage has occurred, by which the power to sell became operative.
>
> (b) An action or proceeding has not been instituted, at law, to recover the debt secured by the mortgage or any part of the mortgage or, if an action or proceeding has been instituted, either the action or proceeding has been discontinued or an execution on a judgment rendered in the action or proceeding has been returned unsatisfied, in whole or in part. For purposes of this subdivision, an action or proceeding for the appointment of a receiver is not an action or proceeding to recover a debt.
>
> (c) The mortgage containing the power of sale has been properly recorded.

14

(d) The party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage.

(2) If a mortgage is given to secure the payment of money by installments, each of the installments mentioned in the mortgage after the first shall be treated as a separate and independent mortgage. The mortgage for each of the installments may be foreclosed in the same manner and with the same effect as if a separate mortgage were given for each subsequent installment. A redemption of a sale by the mortgagor has the same effect as if the sale for the installment had been made upon an independent prior mortgage.

(3) If the party foreclosing a mortgage by advertisement is not the original mortgagee, a record chain of title must exist before the date of sale under section 32161 evidencing the assignment of the mortgage to the party foreclosing the mortgage.

M.C.L. 600.3204.

As the basis for Count VI, Plaintiff states that "the Defendant[s] knew or should have known that Plaintiff was attempting to enter into a Loan Modification" and to reinstate the loan to keep possession of her home but proceeded with foreclosure anyway. ECF No. 1-2 PageID.92. Even accepting that statement as true, Plaintiff has not plausibly alleged that Defendants violated M.C.L.

600.3204.[5] The statute does not prohibit proceeding with foreclosure when a lender knows a homeowner is "attempting" to keep her home. In her Response, Plaintiff misguidedly focuses on establishing prejudice that a party must show in order "[t]o set aside a foreclosure-by-advertisement sale on the basis of a failure to follow the foreclosure requirements set forth in MCL §600.3204." ECF No. 20 PageID.497. Plaintiff skips right to her remedy, glossing over the fact that she has not shown a failure to follow the foreclosure requirements in the first instance.

Because Plaintiff has not alleged any specific provision of M.C.L. § 600.3204 that Defendants breached, and because the conduct she does allege does not appear to violate the statute, Defendants' Motion to Dismiss Count VI is granted.

### e. Count VII – Breach of Duty of Good Faith and Fair Dealing

Count VII of Plaintiff's Complaint alleges breach of the implied covenant of good faith and fair dealing. The factual allegations supporting this Count are that Defendants failed or refused to provide a permanent loan modification after Plaintiff met the

---

[5] It is possible that Plaintiff meant to refer to MCL § 600.3205a–c, which, until 2014, placed restrictions on foreclosures by advertisement in certain circumstances where the foreclosing party failed to offer or follow through on a loan modification. However, the Michigan Legislature repealed the relevant sections of that statute, effective June 19, 2014. P.A. 2014, No. 125 § 1.

16

conditions of the TPP Agreement, and that Defendants "unfairly interfered with Plaintiff's right to receive the benefits of the TPP and permanent Loan Modification and to reinstate the loan." ECF No. 1-2 PageID.93.

Defendants argue that Michigan courts only recognize the independent tort of breach of the duty of good faith and fair dealing where the allegedly breaching party has some discretion to act under the contract. ECF No. 18 PageID.428. In Response, Plaintiff simply repeats this point, implying (though not specifically admitting) that Defendant did have discretion to offer—or not offer—a loan modification under the TPP Agreement. ECF No. 20 PageID.499 ("[E]very contract in which performance is left to party's discretion is subject to an implied covenant of good faith."). Plaintiff weaves a web of contradiction here that undermines her other claims. If Defendants had discretion under the TPP Agreement, their failure to offer a permanent loan modification is no breach at all, torpedoing Plaintiff's Counts II, IV, and V. If Defendants had no discretion, Plaintiff has not stated a claim for breach of duty of good faith and fair dealing.

In considering a motion to dismiss we must read the words of the complaint. Here, that Complaint does not allege that Defendants had discretion under the TPP. Without such an allegation, the pleading of Count VII is inadequate. For that reason, she has not

17

stated a claim upon which relief can be granted and Defendants' Motion to Dismiss this Count is granted.

### f. Count VIII – Violation of the Fair Credit Reporting Act

Plaintiff's final claim is violation of the Fair Credit Reporting Act, § 1681s-2(b).[6] ECF No. 1-2 PageID.94. Defendants argue that § 1681s-2(b) creates a private right of action only where the furnisher of information alleged to have violated the statute received notice from a consumer reporting agency that the consumer disputed the information. ECF No. 18 PageID.430. Indeed, the text of subsection (b) begins "Duties of furnishers of information upon notice of dispute." 15 U.S.C. § 1681s-2(b). Subsection (b) includes a cross-reference to 15 U.S.C. § 1681i(a)(2), which indicates that this notice of dispute is statutorily required to come from a consumer reporting agency (rather from the individual claiming violation of the statute). The Sixth Circuit has affirmed this reading of the statute. *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 617 (6th Cir. 2012) ("how thorough an investigation must be to be 'reasonable' turns on what relevant information was

---

[6] Plaintiff states that Defendant "is a furnisher of information as contemplated by the Fair Credit Reporting Act, ("FCRA"), § 1681s-2(a) & (b)," ECF No. 1-2 PageID.93, but only specifically alleges that Defendant violated subsection (b). But even if Plaintiff had alleged a violation of subsection (a), subsection (c)(1) and (d) go on to preclude individual enforcement of subsection (a). *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 615 (6th Cir. 2012).

18

provided to a furnisher by the [Consumer Reporting Agency] giving notice of the dispute."). A reading of the statute and case law therefore indicates that, unless a consumer reporting agency has notified a furnisher of information that the consumer has disputed some information, the furnisher has not violated § 1618s-2(b).

Because Plaintiff has not alleged that she reported a dispute to a consumer reporting agency and that that agency reported it to Defendants, she has not stated a claim on Count VIII. Defendants' Motion to Dismiss Count VIII is therefore granted.

## V. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED**. The Complaint is therefore **DISMISSED WITH PREJUDICE**, because it appears that any amendments would be futile.

**SO ORDERED.**

Dated: November 30, 2018    s/Terrence G. Berg
                            TERRENCE G. BERG
                            UNITED STATES DISTRICT JUDGE

19

## Certificate of Service

I hereby certify that this Order was electronically filed, and the parties and/or counsel of record were served on November 30, 2018.

s/A. Chubb
Case Manager
